Filed 4/3/25 (unmodified opn. attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JOSE MANUEL CABADA,<br><br>    Defendant and Appellant. | 2d Crim. No. B315418<br>(Super. Ct. No. 2020032612)<br>(Ventura County)<br><br>ORDER MODIFYING OPINION<br>[NO CHANGE IN JUDGMENT] |

THE COURT:

It is ordered that the opinion filed herein on March 24, 2025, be modified as follows:

1. On page 3, delete paragraph 5 in its entirety, "We afforded the parties an opportunity to submit supplemental briefing and vacated our prior decision."

No change in judgment.

GILBERT, P.J.          YEGAN, J.          BALTODANO, J.

Filed 3/24/25 (opinion following transfer from Supreme Court) (unmodified opn.)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>JOSE MANUEL CABADA,<br><br>    Defendant and Appellant. | 2d Crim. No. B315418<br>(Super. Ct. No. 2020032612)<br>(Ventura County)<br><br>OPINION FOLLOWING<br>ORDER VACATING PRIOR<br>OPINION |

      This matter is before us on transfer from our Supreme Court for reconsideration in light of *People v. Lynch* (2024) 16 Cal.5th 730 (*Lynch*) and *Erlinger v. United States* (2024) 602 U.S. 821 (*Erlinger*), which settled a division among the Courts of Appeal on the appropriate standard for assessing prejudice in the context of noncompliance with the requirements of Penal Code section 1170, subdivision (b)[1] as modified by Senate Bill No. 567 (2021-2022 Reg. Sess.) (Senate Bill 567).  In accordance with the direction of the Supreme Court, we vacated our earlier decision and permitted supplemental briefing from the parties.

---

      1 All further statutory references are to the Penal Code unless otherwise indicated.

Jose Manuel Cabada was convicted by jury of second degree robbery, among other offenses. He contends the evidence is insufficient to support his robbery conviction. He also contends that he is entitled to remand for resentencing in light of Senate Bill 567. We rejected these contentions in our prior opinion, which we vacated. (*People v. Cabada* (Jan. 17, 2023, B315418) [nonpub. opn.].)

Having reconsidered the matter in light of *Lynch* and *Erlinger*, we conclude beyond a reasonable doubt that a jury would have found beyond a reasonable doubt all of the aggravating factors upon which the trial court relied to impose the upper term sentence in this case. Accordingly, we affirm.

*Procedural Background*

In May 2020, appellant engaged in a series of offenses that involved stealing a car, robbing a convenience store, and leading police on a high-speed chase that ended after appellant crashed the stolen car into a median on the 101 freeway.

The information charged appellant with three felony counts including second degree robbery (§ 211, count 1), evading an officer (Veh. Code, § 2800.2, subd. (a), count 2), and unlawful driving or taking of a vehicle (Veh. Code, § 10851, subd. (a), count 3). Count 1 alleged a five-year sentencing enhancement for a prior serious felony conviction. (§ 667, subd. (a)(1).) All three counts alleged appellant had sustained a prior strike, a serious or violent felony conviction, and at least two prior felony convictions, which made him presumptively ineligible for probation and required that the imposed sentence be doubled and served in state prison. (§§ 667, subds. (c)(1) & (e)(1), 1170, subd. (h)(3), 1170.12, subds. (a)(1) & (c)(1), 1203, subd. (e)(4).)

The jury found appellant guilty on all three counts.

2

Before sentencing, the trial court denied appellant' motion requesting the court to exercise its discretion to dismiss his prior strike felony conviction pursuant to *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497.

The trial court sentenced appellant to an aggregate term of 12 years eight months in state prison. On count 1, robbery, the trial court imposed the upper term of five years doubled as a second strike for a total of 10 years. On count 2, evading an officer, the trial court imposed one-third the middle term doubled for a total of 16 months, to be served consecutive to count 1. On count 3, unlawful taking or driving of a vehicle, the trial court imposed one-third the middle term doubled for a total of 16 months, also to be served consecutive to count 1.

After we issued an opinion affirming the judgment, appellant petitioned for review and the petition was granted.

On December 11, 2024, our Supreme Court transferred the matter to this court with directions to vacate our prior opinion and reconsider in light of *Lynch, supra*, 16 Cal.5th 730 and *Erlinger, supra*, 602 U.S. 821.

We afforded the parties an opportunity to submit supplemental briefing and vacated our prior decision.

*Factual Background*

During the early morning hours of May 30, 2020, appellant approached two men with his fists raised as they were putting trash in the dumpster of a car dealership in Oxnard. When the men noticed him, they were immediately afraid and ran in opposite directions. Appellant chased the first man, but then turned to chase the other, using a pole saw he found in the back of the second man's truck. Appellant then jumped into the first man's car and drove away.

Shortly thereafter, appellant went into a convenience store in Camarillo. Video surveillance from the store shows appellant got out of the stolen car, entering the store and selecting a gallon of milk. At the counter, appellant requested a pack of cigarettes and another item. He paid the clerk, but then asked for an additional pack of cigarettes. When the clerk retrieved the cigarettes and announced the new total, appellant became agitated. He made a gesture as if he was going to exchange the cigarettes, but then reached under the plexiglass barrier to grab the money in the clerk's hand and knocked the plexiglass barrier to the floor. He told the clerk to give him the money and asked if the clerk thought this was a game. Appellant demanded the other pack of cigarettes as well.

After the clerk complied, appellant raised the milk jug above his head as if he was going to strike the clerk with it or throw it at him. The clerk stepped back and put his hands in the air. Appellant took additional items from a display rack at the counter. As he was exiting the store, he grabbed a container of money for a children's charity and said, "I'm taking this too."

Meanwhile, the clerk activated a silent alarm to summon police. Outside of the store, appellant approached another customer who became startled and drove off.

Police responded and located appellant in the stolen car. When the officer attempted to conduct a traffic stop, appellant fled at a high rate of speed, eventually crashing into a median on the freeway. Appellant suffered significant injuries from the crash and was taken into custody.

*Sufficiency of Evidence*

Appellant contends the evidence is insufficient to support his robbery conviction because there is no evidence that the

4

victim's fear was objective or reasonable.  Appellant's contention is without merit.

"In assessing the sufficiency of the evidence, we review the entire record in the light most favorable to the judgment to determine whether it discloses evidence that is reasonable, credible, and of solid value such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. [Citations.]  Reversal on this ground is unwarranted unless it appears 'that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction].'" (*People v. Bolin* (1998) 18 Cal.4th 297, 331, citing *Jackson v. Virginia* (1979) 443 U.S. 307, 319-320.)  "We neither reweigh the evidence nor reevaluate the credibility of witnesses.  [Citation.]  We presume in support of the judgment the existence of every fact the jury reasonably could deduce from the evidence." (*People v. Jennings* (2010) 50 Cal.4th 616, 638-639 (*Jennings*).)

To establish a robbery was committed by means of fear, the prosecution must present evidence ""that the victim was in fact afraid, and that such fear allowed the crime to be accomplished."" (*People v. Morehead* (2011) 191 Cal.App.4th 765, 772, quoting *People v. Cuevas* (2001) 89 Cal.App.4th 689, 698.)  Fear may be inferred from the circumstances, including by acts of intimidation, even without threats.  (*Morehead*, at pp. 774-775; *People v. Mullins* (2018) 19 Cal.App.5th 594, 605.)

Contrary to appellant's contention, the law does not require a victim's fear to be objectively reasonable.  Rather, "what matters is whether the victim in this case was *subjectively* in fear, not whether a hypothetical and objective 'reasonable person' standing in the victim's shoes would have been afraid."  (*People v. Collins* (2021) 65 Cal.App.5th 333, 341.)  We note that appellant's

5

reliance on *People v. Iniguez* (1994) 7 Cal.4th 847, is misplaced because the Court in that case analyzed the concept of fear within the context of the Legislature's elimination of the active resistance requirement in rape prosecutions.

Nevertheless, appellant contends the evidence was ambiguous and "reasonable minds might have interpreted" the events in a "variety of ways." For example, he contends there is no evidence of force or fear because he did not "strong-arm" the victim or demand that he empty the cash register. He did not scream or utter words conveying a threat of unlawful harm. He did not display a weapon. Appellant concedes that he did raise the milk jug "for one second," but contends this was insufficient to cause the fear necessary to establish a robbery.

Appellant's contentions amount to a request for us to reweigh the evidence and come to a different conclusion. This we may not do. (See *Jennings*, *supra*, 50 Cal.4th at pp. 638-639.) The victim testified that he was "very intimidated" by appellant, who was bigger than the victim. He stated that he complied with appellant's demands because he was afraid appellant would become violent if he did not. He hit the "panic button" to summon immediate help, which was store policy if the clerk felt threatened or there was a robbery. Even after police arrived, the victim was "really rattled" and his "hands were still shaking."

6

*Senate Bill 567*

Appellant contends *Erlinger* and *Lynch* compel remand for a jury trial on all the aggravated circumstances upon which the trial court relied to impose the upper term. He also contends he is entitled to remand because the record does not clearly indicate that the trial court would have imposed the same sentence had it had been aware of the scope of its discretionary sentencing power. (Citing *People v. Gutierrez* (2014) 58 Cal.4th 1354, 1390 (*Gutierrez*).)

Effective January 1, 2022, Senate Bill 567 amended section 1170, subdivision (b) "to prohibit imposition of an upper term sentence unless aggravating circumstances justify that term and the facts underlying any such circumstance, other than a prior conviction, 'have been stipulated to by the defendant or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial.'" (*Lynch, supra*, 16 Cal.5th at p. 742, quoting § 1170, subd. (b)(2); see *Erlinger, supra*, 602 U.S. at p. 838 ["[A] judge may 'do no more, consistent with the Sixth Amendment, than determine what crime, with what elements, the defendant was convicted of'"].) However, "the [trial] court may consider the defendant's prior convictions in determining sentencing based on a certified record of conviction without submitting the prior convictions to a jury." (§ 1170, subd. (b)(3).) The People concede that Senate Bill 567 applies retroactively to appellant.

In imposing the upper term, the trial court relied on the following aggravating factors: (1) appellant's prior record is significant with numerous prior convictions, (2) appellant's prior record indicates conduct of a similar nature, and (3) appellant's performance on probation or parole has not been good. It is

undisputed that no prior convictions were proven by a certified record nor were they admitted to by appellant.

The People concede it "constituted error" for the trial court to rely on these factors in view of *Erlinger* and *Lynch* but contend any error is harmless beyond a reasonable doubt. As we shall explain, we agree with the People.

In *Lynch*, our Supreme Court considered when a remand for resentencing is required for defendants sentenced to an upper term of imprisonment based on factors that do not comply with the current version of section 1170, subdivision (b). (*Lynch*, *supra*, 16 Cal.5th at pp. 742-743, 761.) Our Supreme Court held, "[A] sentence imposed under former section 1170[, subdivision] (b), must be reversed and remanded unless the reviewing court concludes beyond a reasonable doubt that a jury, applying that same standard, would have found true all of the aggravating facts upon which the court relied to conclude the upper term was justified, or that those facts were otherwise proved true in compliance with the current statute." (*Lynch,* at p. 743.)

Further, because Senate Bill 567 "altered the scope of the trial court's discretion" regarding sentences imposed pursuant to former section 1170, subdivision (b), the record must "clearly indicate that the court would have found an upper term justified had it been aware of its more limited discretion." (*Lynch, supra*, 16 Cal.5th at p. 743.)

Here, any factfinding error is harmless beyond a reasonable doubt because appellant's prior record was in fact significant with numerous prior convictions, including ones similar to the instant offense. It is also undisputed that appellant was on parole when he was arrested in the instant case. Had these aggravating factors been presented to the jury, they would have been found

true beyond a reasonable doubt.  (See *Lynch, supra*, 16 Cal.5th at pp. 742-743, 761.)

Further, the trial court's statements clearly indicate that it would not have imposed a lesser sentence.  *Lynch* provided two examples of the kind of "definitive statements" that have been found to "clearly indicate" the trial court would not impose a lesser sentence under any circumstances: first, where the trial court found the defendant was "'"deserving [of] the ultimate sentence of death,'" the trial court observed that the defendant was "'the worst of the worst,'" that he "'show[ed] absolutely no remorse'" and that "'[i]t's as if he has no soul'"'"; and second, "where 'the sentencing court announces that it is aware of forthcoming legislation and then explains how it would exercise its discretion under that legislation.'" (*Lynch, supra*, 16 Cal.5th at p. 777, citing *People v. Flores* (2020) 9 Cal.5th 371, 432, and *People v. Salazar* (2023) 15 Cal.5th 416, 431.)

In imposing the upper-term sentence, the trial court stated:

"As to Count 1 – first, the other thing I do want to say before I get to sentencing is one of the things that struck me about this case is the fact that he was looking to victimize people that particular night.  He was looking for confrontations wherever he could find them, including with the two witnesses or complaining witnesses on the stolen car case, and then he goes into the store and has a confrontation with the clerk.  Then, when he's leaving, he's trying to have a confrontation with people out in the parking lot.  That was clear on the video.  And then he goes into an extremely dangerous pursuit.  This defendant was committed to making victims that particular night.

"Also, I look at the defendant's statement to probation and there is nothing in here that indicates any sort of remorse, any

9

sort of acknowledgment of understanding why and what he was doing.  It is I didn't get a fair trial.  The jury got it wrong.  The witness lied.  There's just nothing in here for me to look at and want to give him much by way of leniency.

"As to Count 1, the Court is going to impose the upper term . . . I chose the upper term because the defendant's prior record is significant.  The defendant's prior record indicates conduct of a similar nature.  His performance on probation or parole has not been good and he's gotten numerous prior convictions."

We conclude the trial court's statements "clearly indicate" it would have imposed the upper term even "under the weight of the presumptive middle term maximum sentence that currently exists."  (*Lynch, supra,* 16 Cal.5th at p. 777; see *Gutierrez, supra,* 58 Cal.4th at p. 1391.)  Accordingly, remand is not warranted.

*Disposition*

The judgment is affirmed.

<u>CERTIFIED FOR PUBLICATION</u>.


                             YEGAN, J.

We concur:



GILBERT, P. J.



BALTODANO, J.

Ryan J. Wright, Judge
Superior Court County of Ventura
_____

Nancy Sánchez, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Noah P. Hill, Supervising Deputy Attorney General, and David F. Glassman, Deputy Attorney General, for Plaintiff and Respondent.